**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
*Steven Mungari*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVEN MUNGARI,**<br><br>               Plaintiff,<br><br>    vs.<br><br>**NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; EQUIFAX INFORMATION SERVICES, LLC,**<br><br>             Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF VIOLATIONS OF:**<br><br>**1. THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ. (FCRA);**<br><br>**2. THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ. (CCRAA); AND**<br><br>**3. THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE §§ 1788, ET SEQ. (RFDCPA)**<br><br>**DEMAND FOR JURY TRIAL** |

///

///

///

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or Plaintiff's financial obligations.

3. The California legislature has also found the banking system is dependent upon fair and accurate credit reporting. As such, California enacted the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, et seq. ("CCCRAA") to ensure fairness, impartiality, and to protect consumer privacy. The CCCRAA also imposes duties on the sources, called "furnisher," that provide credit information to credit reporting agencies.

4. The California legislature has determined that the banking and credit system and

grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

5. The California legislature has also found that the collection of debt purchased by debt buyers has become a significant focus of public concern due to the adequacy of documentation required to be maintained by the industry in support of collection activities and litigation. In that regard, setting specific documentation and process standards will protect consumers, provide needed clarity to courts, and establish clearer criteria for debt buyers and the collection industry.

6. Plaintiff Steven Mungari ("Plaintiff"), through Plaintiff's attorneys, brings this action to challenge the actions of Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union") and Equifax Information Services, LLC, ("Equifax") (collectively "Defendants") as to erroneous reports of inaccurate and derogatory credit information to national reporting agencies, for failure of Defendants to properly investigate, and this conduct caused Plaintiff damages, and Nationstar's wrongful attempts to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages.

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

7.  Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

8.  Defendants failed to properly investigate Plaintiff's disputes and reported inaccurate credit information damaging Plaintiff's creditworthiness.

9.  While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10. Unless otherwise stated, all the conduct engaged in by Defendants took place in Orange County, State of California.

11. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

**JURISDICTION AND VENUE**

13. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §§ 1681, et seq.; 28 U.S.C. § 1331; and supplemental jurisdiction over Plaintiff's state law claims arising from the same common nucleus of facts.

14. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA"), the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, et seq., and Nationstar's violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788, et seq.

15. Venue is proper for the following reasons: (i) Plaintiff resides in Orange County, which is within the judicial district; (ii) the conduct and harm

complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

16. Plaintiff is a natural person residing in Orange County, State of California. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c). In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

17. Defendant Nationstar is a Delaware limited liability company doing business in the State of California with a principal place of business in Texas.

18. Defendant Nationstar is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

19. Defendant Nationstar, in the ordinary course of business, regularly, on behalf of themselves or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c) and 15 U.S.C. § 1692a(6).

20. Defendant Experian is a national credit reporting agency, and Ohio corporation, doing business in California, with a principal place of business in California.

21. Defendant Equifax is a national credit reporting agency, and Georgia limited liability company, doing business in California, with a principal place of business in Georgia.

22. Defendant Trans Union is a national credit reporting agency, and Delaware limited liability company doing business in California, with a principal place of business in Illinois.

23. Defendants Experian, Equifax and Trans Union each regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish

the reports and are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

24. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f) and a "debt" as that term is defined by 15 U.S.C. 1692a(5).

25. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## FACTUAL ALLEGATIONS

26. At all times relevant, Plaintiff was an individual residing within the State of California.

27. At all times relevant, Defendants conducted business in the State of California.

28. In or around 2001 Plaintiff bought his home and obtained a home mortgage loan (the "Mortgage") which was serviced by many mortgage companies over the years. He was never past due.

29. In or around August 2020, Plaintiff's Mortgage was being serviced by United Wholesale Mortgage ("UWM").

30. On or about August 27, 2020, Plaintiff issued an online payment from his Chase Bank account to UWM in the amount of $3,687.24 for the September monthly payment of his Mortgage.

31. On or about September 23, 2020, Plaintiff issued an online payment from his Chase Bank account to UWM in the amount of $3,657.24 for the October monthly payment of his Mortgage.

32. In or around October 2020, Plaintiff's Mortgage was being serviced by One American Mortgage ("OAM").

33. On or about October 30, 2020, Plaintiff issued a personal check from his Chase Bank account to OAM in the amount of $3,311.12 for the November monthly payment of his Mortgage. The check was cashed by OAM on November 5, 2020.

34. On or about November 30, 2020, Plaintiff issued a personal check from his Chase Bank account to OAM in the amount of $3,311.12 for the December monthly payment of his Mortgage. The check was cashed by OAM on December 4, 2020.

35. In or around January 2021, Plaintiff's Mortgage was being serviced by Dovenmuehle Mortgage, Inc. ("Dovenmuehle").

36. On or about January 5, 2021, Plaintiff issued an online payment from his Chase Bank account to Dovenmuehle in the amount of $3,322.62 for the January monthly payment of his Mortgage.

37. On or about January 26, 2021, Plaintiff issued a personal check from his Chase Bank account to Dovenmuehle in the amount of $3,128.93 for the February monthly payment of his Mortgage. The check was cashed by Dovenmuehle on January 29, 2021.

38. In or around March 2021, Plaintiff's Mortgage was being serviced by Nationstar d/b/a Mr. Cooper.

39. On or about March 11, 2021, Plaintiff issued an online payment from his Chase Bank account to Nationstar in the amount of $3,311.12 for the March monthly payment of his Mortgage.

40. On or about March 30, 2021, Plaintiff issued an online payment from his Chase Bank account to Nationstar in the amount of $3,311.12 for the April monthly payment of his Mortgage.

41. On or about May 3, 2021, Plaintiff issued an online payment from his Chase Bank account to Nationstar in the amount of $3,311.12 for the May monthly payment of his Mortgage.

42. On or about June 2, 2021, Plaintiff issued an online payment from his Chase Bank account to Nationstar in the amount of $3,311.12 for the June monthly payment of his Mortgage.

43. On or about July 2, 2021, Plaintiff issued an online payment from his Chase Bank account to Nationstar in the amount of $3,311.12 for the July monthly payment of his Mortgage.

44. Each time the Mortgage was transferred to a new servicer (UWM, OAM, Dovenmuehle) the Mortgage was not past due. The Mortgage with the other servicers, UWM, OAM, Dovenmuehle, does not show up as past due on any of Plaintiff's credit reports.

45. Plaintiff was up to date with all his Mortgage payments, including all his payments to Nationstar, and continues to be up to date with his payments with zero past due amounts.

46. On or about August 2, 2021, Nationstar reported Plaintiff's Mortgage account as past due $6,622 ("Debt") which was incorrect. The Debt was money, property, or their equivalent which was due or owing, or alleged to be due or owing, from a natural person to another person and therefore "debt(s)" as that term is defined by 15 U.S.C. § 1692a(5) and Cal. Civ. Code § 1788.2(d), and a "consumer debt" as that term is defined by Cal. Civ. Code § 1788.2(f).

47. This past due status was reported by Nationstar to Equifax, Trans Union, and Experian.

48. On or about August 9, 2021, Plaintiff properly sent a certified dispute letter to Equifax, Trans Union, and Experian, bringing attention to their erroneous reporting regarding the Nationstar account as Plaintiff had been making payments on his loan and was not past due. Plaintiff included proof of payment in the form of bank statements, from June 2020-July 2021, illustrating that payment that was continually tendered to Nationstar, as well as the other

servicers, UWM, OAM, Dovenmuehle, in the appropriate amount at the appropriate time.

49. On or about September 3, 2021, Plaintiff received a response from Equifax, Trans Union, and Experian all affirming that Plaintiff's Mortgage account was past due and refusing to correct the erroneous information from Plaintiff's account.

50. On or about October 21, 2021, Plaintiff properly sent a certified second dispute letter to Equifax, Trans Union, and Experian, disputing the past due status and outstanding balance, and demanding that the erroneous reporting be corrected.

51. On or about November 19, 2021, Plaintiff received the dispute results from Trans Union reporting the same information; that Plaintiff's Nationstar Mortgage account was past due, the outstanding balance stood at $6,622, and a maximum delinquency of 60 days in 6/2021 for $6,622.

52. On or about November 24, 2021, Plaintiff received the dispute results from Experian reporting the same information; Plaintiff's Nationstar Mortgage account was past due, the outstanding balance stood at $6,622.

53. As of the date of this filing, Plaintiff has not received a response to his second dispute letter from Equifax.

54. Defendants reported, or caused to be reported, inaccurate information on Plaintiff's credit reports, including that the Nationstar Mortgage account was "past due" with a balance due and other inaccurate and derogatory information, as detailed herein.

55. Presently, Defendants continue to report inaccurate information related to the Mortgage on Plaintiff's credit reports as detailed herein.

56. The abovementioned reporting on Plaintiff's credit reports from Defendant Nationstar was a "communication(s)" as 15 U.S.C. § 1692a(2) defines that term, and "debt collection" as that phrase is defined by Cal. Civ. Code § 1788.2(b).

KAZEROUNI
LAW GROUP, APC

57.   Defendant Nationstar's conduct violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

58.   Defendant Nationstar's conduct violated 15 U.S.C. § 1692e(2) by falsely representing the amount and the legal status of an alleged debt in the various credit reports sent to Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

59.   Defendant Nationstar's conduct violated 15 U.S.C. § 1692e(10) by Defendant Nationstar's use of various false representations and deceptive means in connection with its attempts to collect an alleged debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

60.   Defendant Nationstar's conduct violated 15 U.S.C. § 1692f because Defendant Nationstar utilized unfair and unconscionable means in its attempts to collect an alleged debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendant has also violated Cal. Civ. Code § 1788.17.

61.   Defendant Nationstar continues to make false, deceptive, unfair, oppressive, and harassing threats to Plaintiff about foreclosing on Plaintiff's home even though Plaintiff is not delinquent with his Mortgage payments and has continued to timely make his Mortgage payments to Defendant Nationstar.

62.   Through all the above-mentioned conduct, Defendant Nationstar took action against Plaintiff concerning the alleged debt in violation of the statutes discussed above. Specifically, Defendant has violated 15 U.S.C. §§ 1692d; 1692e(2), 1692e(10), and 1692f. These sections are incorporated into the



RFDCPA through Cal. Civ. Code § 1788.17; therefore, Defendant has also violated Cal. Civ. Code § 1788.17.

63. As a result of Defendant Nationstar's unfair, oppressive, and abusive conduct in connection with their debt collection activity, Plaintiff has suffered from invasion of privacy, damage to Plaintiff's credit score and credit worthiness, mental anguish by way of stress, frustration, and anxiety over the fact that Defendant Nationstar continued its collection communications to Plaintiff despite receiving the multiple dispute letters requesting Defendant Nationstar to correct its erroneous error regarding the Debt.

**Trans Union and Nationstar Reported Credit Information**

**Re: Account No. 67983****

64. In a Trans Union investigation report dated August 2, 2021, Trans Union and Nationstar reported the following inaccurate and derogatory information regarding Plaintiff:

- Account Status: 60 Days Past Due
- Past Due: $6,622
- Maximum delinquency of 60 days in 6/2021 for $6,622

65. Trans Union and Nationstar should not have reported derogatory information on the account because Plaintiff had paid the appropriate monthly amount as of July 2, 2021. As of July 2021, Plaintiff was not past due on the Mortgage with Nationstar or any other servicer.

66. On or about August 9, 2021, Plaintiff disputed Nationstar and Trans Union's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying Trans Union, in writing, of the incorrect and inaccurate credit information furnished by Nationstar.

67. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

68. On information and belief, upon receiving the dispute letters, Trans Union timely notified Nationstar of Plaintiff's disputes as required by 15 U.S.C. § 1681i(a)(2).

69. Nationstar was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

70. Trans Union was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

71. A reasonable investigation by these Defendants would have indicated that Plaintiff's account was paid in compliance with the Mortgage repayment terms, it was not past due or delinquent. A reasonable investigation by Trans Union and Nationstar would have indicated that Plaintiff did not owe any past due balances.

72. Trans Union and Nationstar failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

73. Trans Union and Nationstar continued to report the inaccurate derogatory information on Plaintiff's report and additional derogatory information. Specifically, in the dispute results received by Plaintiff dated September 3, 2021, Trans Union and Nationstar reported that Plaintiff was 60 days past due and that the account carried a past due balance of $6,622. This was inaccurate since Plaintiff's account had been paid in compliance with the Mortgage repayment terms to and through July 2, 2021, and thus not delinquent or past due. Nationstar's and Trans Union's reporting that the Mortgage account was past due, and had a delinquent balance was, therefore, inaccurate.

74. On or about October 21, 2021, Plaintiff disputed for a second time the inaccurate and derogatory information reported regarding the Mortgage account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Trans Union, in writing, of the incorrect and inaccurate credit information furnished by it.

75. On information and belief, upon receiving the second dispute letter, Trans Union timely notified Nationstar of Plaintiff's second dispute as required by 15 U.S.C. § 1681i(a)(2).

76. Nationstar was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

77. Trans Union was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i

78. A reasonable investigation by these Defendants would have indicated that Plaintiff's account was not past due or delinquent and no balance was owed on the Mortgage account.

79. Trans Union and Nationstar failed to review all relevant information provided by Plaintiff in the second dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

80. Trans Union and Nationstar re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, Trans Union and Nationstar now reported, on Trans Union's dispute results dated November 19, 2021, that the disputed information was "updated," the account has been 60 days past due since June 2021, and a past due balance of $6,622 remained on his account. This was inaccurate because Plaintiff's account had been receiving the appropriate monthly payments consistently up to and through July 2, 2020, and thus had no past due balance. Nationstar's and Trans Union's reporting that the Mortgage account carried a past due balance was therefore inaccurate.

81. After receiving notice of Plaintiff's disputes, Defendants republished the inaccurate and derogatory information on the account.

82. Defendants further failed to contact Plaintiff and request additional information from Plaintiff that would aid in reporting the correct status of the account.

83. Therefore, Defendants upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b)(1)(A).

84. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Nationstar responding and verifying the incorrect information to the credit reporting agencies, Nationstar failed to communicate with Trans Union to aid in reporting the correct status of Plaintiff's account.

85. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Defendant Trans Union responding and reaffirming the incorrect information to Plaintiff, Defendant Trans Union failed to communicate with Nationstar to aid in reporting the correct status of Plaintiff's account.

86. Nationstar and Trans Union, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

87. Defendants failed to review all relevant information provided by Plaintiff in the disputes to Trans Union, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

88. Due to Defendants' failure to investigate, they each further failed to correct and update Plaintiff's information on the Mortgage account as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

89. Plaintiff's continued efforts to correct Defendants' erroneous and negative information by disputing the reporting of the Mortgage account with Defendants were futile.

90. Defendant's continued inaccurate and negative reporting on the Mortgage account in light of its knowledge of the actual errors was willful.

91. Defendant's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

92. As a result of Nationstar's and Trans Union's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

93. By inaccurately reporting account information after notice and confirmation of their errors, Nationstar and Trans Union failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.



### **Experian and Nationstar Inaccurately Reported Credit Information Re: Account No. 67983\*\*\*\***

94. In an Experian investigation report dated August 2, 2021, Experian reported the following inaccurate and derogatory information regarding the account:

- Account Status: 60 Days Past Due
- Past Due: $6,622
- Date Opened: 09/30/2020

95. Experian and Nationstar should not have reported derogatory information on the Mortgage account, because Plaintiff had paid the appropriate monthly amount as of July 2, 2021, abiding by the loan's monthly Mortgage payment terms. Further this account was not opened on September 30, 2020, because the mortgage was being serviced by UWM at that time and not Nationstar.

96. On or about August 9, 2021, Plaintiff disputed Nationstar and Experian's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying

1  Experian, in writing, of the incorrect and inaccurate credit information
2  furnished by Nationstar.

3  97. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian,
4  requesting the above inaccurate and incorrect derogatory information be
5  updated, modified or corrected.

6  98. On information and belief, upon receiving the dispute letters, Experian timely
7  notified Nationstar of Plaintiff's disputes as required by 15 U.S.C. §
8  1681i(a)(2).

9  99. Nationstar was required to conduct an investigation into this specific account on
10  Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b).

11  100. Experian was required to conduct a reinvestigation into this specific account on
12  Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

13  101. A reasonable investigation by these Defendants would have indicated that
14  Plaintiff's account was paid in compliance with the Mortgage repayment terms,
15  and thus was not past due or delinquent. A reasonable investigation by Experian
16  and Nationstar would have indicated that Plaintiff did not owe any past due
17  balance that Experian and Nationstar should report the Mortgage account as
18  current and timely paid.

19  102. Experian and Nationstar failed to review all relevant information provided by
20  Plaintiff in the dispute to Trans Union, as required by and in violation of 15
21  U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

22  103. Experian and Nationstar continued to report the inaccurate derogatory
23  information on Plaintiff's report and additional derogatory information.
24  Specifically, in the dispute results received by Plaintiff dated September 3,
25  2021, Experian and Nationstar reported that Plaintiff was 60 days past due and
26  that the account carried a past due balance of $6,622. This was inaccurate since
27  Plaintiff's account had been paid in compliance with the Mortgage repayment
28  terms up to and through July 2, 2021, and thus not delinquent or past due.

Nationstar's and Experian's reporting that the Mortgage account was past due, and delinquent was, therefore, inaccurate.

104. On or about October 21, 2021, Plaintiff disputed for a second time the inaccurate and derogatory information on the Mortgage account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished and reported by Defendants.

105. On information and belief, upon receiving the second dispute letter, Experian timely notified Nationstar of Plaintiff's second dispute as required by 15 U.S.C. § 1681i(a)(2).

106. Nationstar was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b).

107. Experian was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i

108. A reasonable investigation by these Defendants would have indicated that Plaintiff's account was not past due or delinquent and that the account was current and paid in compliance with the Mortgage repayment terms.

109. Experian and Nationstar failed to review all relevant information provided by Plaintiff in the second dispute to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

110. Experian and Nationstar re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, Experian and Nationstar now reported, on Experian's dispute results dated November 24, 2021, that the disputed information was "updated," the account has been 60 days past due since June 2021, and a past due balance of $6,622 remained on his account. This was inaccurate because Plaintiff's account had been receiving the appropriate monthly payments consistently up to and through July 2, 2020, and thus had no past due balance. Nationstar's and Experian's reporting that the account carried a past due balance was therefore inaccurate.

111. After receiving notice of Plaintiff's disputes, Defendants republished the inaccurate and derogatory information on the account.

112. Defendants further failed to contact Plaintiff and request additional information from Plaintiff that would aid in reporting the correct status of the account.

113. Therefore, Defendants upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

114. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Nationstar responding and verifying the incorrect information to the credit reporting agencies, Nationstar failed to communicate with Experian to aid in reporting the correct status of the account.

115. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Defendant Experian responding and verifying the incorrect information to Plaintiff, Defendant Experian failed to communicate with Nationstar to aid in reporting the correct status of the Mortgage account.

116. Nationstar and Experian, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

117. Defendants failed to review all relevant information provided by Plaintiff in the disputes to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

118. Due to Defendants failure to investigate, they each further failed to correct and update Plaintiff's information on the account as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

119. Plaintiff's continued efforts to correct Defendants' erroneous and negative information by disputing the reporting on the account with Defendants were futile.

120. Defendant's continued inaccurate and negative reporting on the account in light of its knowledge of the actual errors was willful.

121. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

122. As a result of Nationstar's and Experian's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

123. By inaccurately reporting account information after notice and confirmation of their errors, Nationstar and Experian failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.

## **Equifax and Nationstar Inaccurately Reported Credit Information**
## **Re: Account No. 67983\*\*\*\***

124. In an Equifax investigation report dated August 2, 2021, Equifax reported the following inaccurate and derogatory information regarding the account:

- Account Status: 60 Days Past due
- Past Due: $6,622
- Date Opened: September 30, 2020

125. Equifax and Nationstar should not have reported derogatory information on the Mortgage account, because Plaintiff had paid the appropriate monthly amount as of July 2, 2021, abiding by the loan's monthly Mortgage payment terms. Further this account was not opened on September 30, 2020, because the mortgage was being serviced by UWM at that time and not Nationstar.

126. On or about August 9, 2021, Plaintiff disputed Nationstar and Equifax's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Nationstar and reported by Equifax.

127. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

128. On information and belief, upon receiving the dispute letters, Equifax timely notified Nationstar of Plaintiff's disputes as required by 15 U.S.C. § 1681i(a)(2).

129. Nationstar was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

130. Equifax was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

131. A reasonable investigation by these Defendants would have indicated that Plaintiff's account was paid in compliance with the Mortgage repayment terms, and thus was not past due or delinquent. A reasonable investigation by Equifax and Nationstar would have indicated that Plaintiff did not owe any past due balance that Equifax and Nationstar should report the Mortgage account as current and timely paid.

132. Equifax and Nationstar failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

133. Experian and Nationstar continued to report the inaccurate derogatory information on Plaintiff's report and additional derogatory information. Specifically, in the dispute results received by Plaintiff dated September 3, 2021, Experian and Nationstar reported that Plaintiff was 60 days past due and that the Mortgage account carried a past due balance of $6,622. This was

inaccurate since Plaintiff's account had been paid in compliance with the Mortgage repayment terms up to and through July 2, 2021, and thus not delinquent or past due. Nationstar's and Experian's reporting that the Mortgage account was past due, and delinquent was, therefore, inaccurate.

134. Equifax and Nationstar continued to report the inaccurate derogatory information on Plaintiff's report and additional derogatory information. Specifically, in the dispute results received by Plaintiff dated September 3, 2021, Equifax and Nationstar reported that Plaintiff was now 60-80 days past due and that the account carried a past due balance of $6,622. This was inaccurate since Plaintiff's account had been paid in compliance with the Mortgage repayment terms up to and through July 2, 2021, and thus not delinquent or past due. Nationstar's and Equifax's reporting that the account was past due, and delinquent was, therefore, inaccurate.

135. On or about October 21, 2021, Plaintiff disputed for a second time the inaccurate and derogatory information on the Mortgage account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished and reported by Defendants.

136. On information and belief, upon receiving the second dispute letter, Equifax timely notified Nationstar of Plaintiff's second dispute as required by 15 U.S.C. § 1681i(a)(2).

137. Nationstar was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

138. Equifax was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i

139. A reasonable investigation by these Defendants would have indicated that Plaintiff's account was not past due or delinquent but instead paid in full.

140. Equifax and Nationstar failed to review all relevant information provided by Plaintiff in the second dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

141. Defendants Equifax and Nationstar failed to respond to Plaintiff's second dispute letter as of the date of this filing. Defendant continues to report that Plaintiff is past due on his Mortgage.

142. Therefore, Defendants upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b)(1)(A).

143. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Nationstar responding and verifying the incorrect information to the credit reporting agencies, Nationstar failed to communicate with Equifax to aid in reporting the correct status of the account.

144. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Defendant Equifax responding and verifying the incorrect information to Plaintiff, Defendant Equifax failed to communicate with Nationstar to aid in reporting the correct status of the Mortgage account.

145. Nationstar and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

146. Defendants failed to review all relevant information provided by Plaintiff in the disputes to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

147. Due to Defendants failure to investigate, they each further failed to correct and update Plaintiff's information on the account as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of

inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

148. Plaintiff's continued efforts to correct Defendants' erroneous and negative information by disputing the reporting on the Mortgage account with Defendants were futile.

149. Defendant's continued inaccurate and negative reporting on the Mortgage account in light of its knowledge of the actual errors was knowing and willful.

150. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

151. As a result of Nationstar and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

152. By inaccurately reporting account information after notice and confirmation of their errors, Nationstar and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.

### ***Inaccurate Credit Reporting and Reporting Standards***

153. Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

154. The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

155. On information and belief, Defendants adopted and at all times relevant implemented Metro 2.

156. On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in



place adequate and reasonable policies and procedures to handle investigations of disputed information.

157. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting inaccurate information regarding Plaintiff's Mortgage account.

158. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

159. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.   credit or insurance to be used primarily for personal, family, or household purposes;

    ii.   employment purposes; or

    iii.   any other purpose authorized under section 1681b.

160. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

161. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

162. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports

163. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

164. Defendants' departures from the credit industry's own reporting standards and reporting inaccurate and derogatory information has caused Plaintiff to suffer damages from reduced FICO credit scores.

### *Credit Scoring*

165. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

166. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

167. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

168. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

169. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

170. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

171. Here, inaccurately reporting the Mortgage account as past due and/or delinquent when it was in timely paid without an overdue balance adversely affects Plaintiff's FICO score.

172. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

173. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/

### *Defendants' Failures and Plaintiff's Damages*

174. It is inaccurate to report the Mortgage account as past due with a delinquent balance when in fact the Motgage account was timely paid with no balance overdue.

175. Reporting that an account is still past due and has a delinquent balance is detrimental to a consumer's credit reputation.

176. As evidenced by Defendants' failures to correct the reporting of the Mortgage account despite receiving accurate information from Plaintiff showing the

Mortgage account paid on time and not delinquent, Defendants each failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

177. As evidenced by the inaccurate re-reporting, Defendants each failed to conduct an investigation or reinvestigation upon receipt of Plaintiff's dispute with respect to the disputed information related to the Mortgage account as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

178. Defendants each failed to review all relevant information and documents provided by Plaintiff with his disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

179. In addition to Defendants' failure to reasonably investigate, Defendants each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

180. Defendants' continued inaccurate and derogatory reporting of the Mortgage account in light of their knowledge of the errors was knowing and willful. Plaintiff is, accordingly, eligible for statutory damages.

181. Also, as a result of Defendants' continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, invasion of privacy, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and Plaintiff has suffered loss of personal time and worry, fear, stress, anxiety, and sleeplessness.

182. Creating the false impression of the Mortgage account as past due with a delinquent balance creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive

other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports engaged in judgment-based lending.

183. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than Plaintiff otherwise would.

184. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

185. By inaccurately reporting account information after notice from Plaintiff, Defendants each failed to take the appropriate measures in violation of the FCRA and as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violations of the Fair Credit Reporting Act

### 15 U.S.C. §§ 1681, *et seq.* (FCRA)

186. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

187. The foregoing acts and omissions of each Defendant constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

188. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each of the Defendants.

189. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from each of the Defendants.

## SECOND CAUSE OF ACTION

### Violations of the California Consumer Credit Reporting Agencies Act
### Cal. Civ. Code §§ 1785.1, et seq. (CCCRAA)

190. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

191. The foregoing acts and omissions by Nationstar constitute a violation of the California Consumer Credit Reporting Agencies Act (CCCRAA).

192. In the regular course of its business operations, Nationstar routinely furnishes information to credit reporting agencies pertaining to transactions between Nationstar and consumers, so as to provide information regarding a consumer's credit worthiness, credit history, credit standing, and credit capacity.

193. Because Nationstar is a partnership, corporation, association, or other entity, it is a "person" as that term is defined under Cal. Civ. Code § 1785.3(j). Nationstar is and always was obligated pursuant to Cal. Civ. Code § 1785.25(a) to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows, or should have known, that the information is incomplete or inaccurate as required by Cal. Civ. Code § 1785.25(a).

194. Since Nationstar received all documents required to determine the inaccuracy of the reporting, Nationstar should have known to update said reporting.

195. Nationstar also should have determined that its reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

196. As a result of each and every violation of the CCCRAA, Plaintiff is entitled to

any actual damages against each Defendant pursuant to Cal. Civ. Code §
1785.31(a)(2)(A); punitive damages of $100-$5,000 per willful violation
pursuant to Cal. Civ. Code § 1785.31(a)(2)(B); equitable and injunctive relief
pursuant to Cal. Civ. Code § 1785.31(b); and costs of litigation and reasonable
attorney's fees pursuant to Cal. Civ. Code § 1785.31(d).

///

///

///

## THIRD CAUSE OF ACTION

**Violations of the Rosenthal Fair Debt Collection Practices Act Reporting Act**

**Cal. Civ. Code §§ 1788, et seq. (RFDCPA)**

**(As to Defendant Nationstar Only)**

197. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

198. The foregoing acts and omissions by Defendant Nationstar constitute numerous and multiple violations of the RFDCPA.

199. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendant.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- An award of actual damages against each of the Defendants pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of statutory damages against each of the Defendants pursuant to 15 U.S.C. § 1681n(a)(1);
- An award of punitive damages against each of the Defendants as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- An award of costs of litigation and reasonable attorney's fees against each of the Defendants, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against each Defendant individually;
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1785.31(a)(1) and § 1785.31(d), against each Defendant individually;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.31(a) pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- Equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);
- an award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a), against Defendant Nationstar;
- an award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against Defendant Nationstar;
- an award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c), against Defendant Nationstar; and
- Any other relief the Court may deem just and proper.

///
///

## TRIAL BY JURY

200.  Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.


Dated: January 20, 2022                    Respectfully submitted,

                                           **KAZEROUNI LAW GROUP, APC**


                                    By:  /s/  Mona Amini
                                         David J. McGlothlin, Esq.
                                         Mona Amini, Esq.
                                         *Attorneys for Plaintiff*